The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Nance. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties of their representatives, or amend the Opinion and Award with the exception of the need for plaintiff to use a treadmill supplied by Defendant.
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between plaintiff and defendant.
3. Plaintiff's average weekly wage was $492.00, which generates a compensation rate of $328.00.
The parties also stipulated that plaintiff was paid her full salary from the date of injury through 23 April 1993, the date her employment with defendant was terminated.
* * * * * * * * * * * * *
Based upon the competent evidence adduced from the record, the Full Commission makes the following:
FINDINGS OF FACT
1. Plaintiff is a 31-year-old high school graduate who worked various odd jobs before going to work for Piedmont (defendant's predecessor) in May 1985.
2. Plaintiff worked for Piedmont and then US Air as a customer service agent and revenue accounting clerk before transferring to Charlotte in 1989 to work in the Utility Department. Plaintiff's job in the Utility Department involved cleaning the aircraft between passenger loads and Preparing the aircraft for new passengers.
3. On 14 June 1992 plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant when, while lifting a heavy trash bag, it became caught and caused a burning sensation in her back. The injury was duly reported and she sought immediate medical treatment.
4. On 24 June 1992 plaintiff came under the care of Dr. Garland, an orthopaedic surgeon, who diagnosed moderately severe thoracic and scapular sprain with subacromial impingement left shoulder and biceps tendinitis. Medication and physical therapy were prescribed and plaintiff was advised to remain out of work for two weeks. By 8 July 1992 plaintiff was slowly improving and she was released to return to light duty with no bending, stooping, lifting, or overhead activities with the left arm.
5. Plaintiff returned to work for defendant in a completely sedentary job answering telephones. Plaintiff complained to Dr. Garland that this caused severe pain, but Dr. Garland felt she was able to perform this work and advised her to continue in that capacity. Then on 20 July 1992 Dr. Garland took plaintiff back out of work for further testing due to her continued complaints of intolerable shoulder and neck pain from prolonged sitting.
6. Bone scan and MRI of the cervical and lumbar spine were normal. Results of a functional capacity evaluation indicated that plaintiff was not capable of returning to her regular job in the Utility Department and further revealed submaximal effort with positive symptom magnification. Dr. Garland then referred plaintiff to a work hardening program to extinguish the symptom magnification and to try to get plaintiff back to work.
7. On 21 September 1992 at the conclusion of the work hardening program plaintiff continued to have some symptoms but was released to light work with no overhead activities and no lifting greater than five pounds.
8. In the meantime plaintiff had bid into a much less strenuous job in the Facility Cleaning Department which involved basic housekeeping duties in the maintenance hanger. Plaintiff began this job in October 1992.
9. In December 1992 Dr. Garland suspected plaintiff was developing fibromyalgia and he referred plaintiff to Dr. McCain, a rheumatologist experienced in treating fibromyalgia, for evaluation.
10. Plaintiff first saw Dr. McCain on 24 December 1992. On exam plaintiff demonstrated a number of fibrocystic tender points which are diagnostic of fibromyalgia.
11. In February 1993 plaintiff underwent another functional capacity evaluation, the results of which again revealed submaximal effort and symptom magnification. Dr. Parisi, a psychologist, ordered an MMPI and interpreted the results as indicating that psychological factors, including perhaps a somatization disorder, where affecting plaintiff's physical condition.
12. Based on these results and in the absence of any orthopaedic basis to explain plaintiff's continued complaints Dr. Garland concluded that plaintiff had reached maximum medical improvement with no permanent impairment and released her to return to her regular duty job as of 30 March 1993.
13. When plaintiff did not return to work on the 30th, defendant sent plaintiff a letter advising her that her failure to do so may result in her termination.
14. Prior to this point in time, plaintiff had bid on a job with defendant in Florida which she was scheduled to begin on 26 April 1993. This job which plaintiff was actively seeking was a much heavier job than the job in the Facility Cleaning Department plaintiff had held since October 1992.
15. Plaintiff last saw Dr. McCain (as well as Dr. Garland) at the end of March 1993. Throughout his treatment of plaintiff Dr. McCain felt plaintiff was capable of, and would benefit from, performing light duty work, but that she was unable to perform her "regular work." Dr. McCain thought plaintiff's regular work was the job she was performing in June 1992 in the Utility Department and was unaware that since that time plaintiff had bid on and received the lighter job in the Facility Cleaning Department. Dr. McCain was also unaware that plaintiff had bid on and received a more strenuous job in Florida and had he known, he would have recommended against it, given the complaints plaintiff was voicing to him.
16. Defendant undertook surveillance of plaintiff in April 1993 before she returned to work. While Dr. McCain had encouraged plaintiff to be as active as possible to avoid deconditioning, that was in the context of advising her that it was okay to do basic housekeeping chores a few hours a week necessary to raise her daughter as a single mother. The activities reflected on the surveillance video tapes, while not so impressive as to be determinative, do show plaintiff performing physical activities inconsistent with her complaints to her doctors. (E.g., plaintiff told Dr. Parisi that she had constant pain in her back made worse with any type of activity.)
17. Relying on the activities revealed in the surveillance video tapes, defendant terminated plaintiff's employment effective 23 April 1993 pursuant to company policy regarding misrepresentations to obtain employee benefits. Since that time plaintiff has not worked or looked for work because she had nine years in with defendant and wants only to return to work there. She is pursuing grievances with regard to her termination but has not yet been successful on being reinstated.
18. As a result of the injury of 14 June 1992 plaintiff developed fibromyalgia. The treatment plaintiff received from Dr. McCain was reasonable and necessary to effect a cure, give relief, and lessen the period of plaintiff's disability associated with the injury of 14 June 1992. At this time plaintiff requires treatment at a pain clinic to effect a cure and give relief.
19. A treadmill purchased by defendant for plaintiff's use in her home is necessary to effect a cure, give relief, or lessen the period of plaintiff's disability.
20. Taking into account plaintiff's education, her relative youth, the activities reflected on the video tapes, Dr. Garland's opinion that plaintiff could return to regular work as of 30 March 1993, Dr. McCain's opinion that plaintiff at all times throughout her treatment could perform light work, Dr. McCain's lack of understanding as to what plaintiff's regular work was once she transferred to the Facility Cleaning Department, and the fact that plaintiff bid on a job in Florida that is much more strenuous than the job which she would now contend she is incapable of performing because of constant pain, and the fact that plaintiff has not looked for work at all since she was terminated by defendant, the Full Commission would conclude there has been a failure on the part of the plaintiff to show that because of the injury of 14 June 1992 she has been incapable of work in any capacity since she was terminated by defendant, or that it would have been futile for her to look for work because of her injury and pre-existing conditions.
21. Dr. McCain gave plaintiff an eight to ten percent rating under the AMA guidelines. He did not assign this percentage to the back, as plaintiff contends, and the AMA guidelines use whole body ratings.
22. Plaintiff retains no permanent disability as a result of the injury of 14 June 1992.
* * * * * * * * * * * * *
The foregoing stipulations and findings of fact engender the following:
CONCLUSIONS OF LAW
1. "The burden is on the employee to show that she is unable to earn the same wages she earned before the injury, either in the same employment or in other employment. . . . The employee may meet this burden in one of four ways: (1) the production of medical evidence that she is physically or mentally, as a consequence of work related injury, incapable of work in any employment, . . . (2) the production of evidence that she is capable of some work, but that she has after a reasonable effort on her part, been unsuccessful in her effort to obtain employment, . . . (3) the production of evidence that she is capable of some work but that it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek unemployment, . . . or (4) the production of evidence that she has obtained other employment at a wage less than that earned prior to the injury." Russell v. Lowes ProductDistribution, 108 N.C. App. 762 (1993). Because plaintiff has failed to carry her burden of proof on the issue of disability since 23 April 1993, she is not entitled to further benefits under G.S. § 97-29 or G.S. § 97-30.
2. Defendant shall be responsible for paying for the treatment plaintiff received from Dr. McCain, as well as for treatment at a pain clinic to be selected by defendant, because such treatment was and is reasonable and necessary to effect a cure, give relief, and lessen the period of disability. Defendant shall also be responsible for paying for the treadmill. G.S. § 97-25.
* * * * * * * * * * * * *
The foregoing stipulations, findings of fact and conclusions of law engender the following
AWARD
1. Plaintiff's claim for further compensation on account of her injury of 14 June 1992 is hereby DENIED, pending receipt by the Commission of the deposition of Dr. McCain hereafter discussed.
2. Each side shall pay its own costs.
3. Defendant shall pay all medical expenses incurred by plaintiff for treatment of the involved injury and the related fibromyalgia, including treatment by Dr. McCain and treatment at a pain clinic, when bills for the same have been submitted and approved in accordance with procedures approved by the Industrial Commission.
4. Defendant shall pay an expert witness fee in the amount of $300.00 to Dr. Garland and $350.00 to Dr. McCain.
5. Since the decision of the Deputy Commissioner is hereby affirmed, Defendant's motion for additional testimony is denied. Plaintiff shall have 60 days from the date of this Opinion and Award within which to take the deposition of Dr. Glenn McCain relative to any rating of plaintiff under the N.C. Industrial Commission guidelines resulting from the injury by accident. Such deposition shall be filed promptly with the Full Commission for consideration as to any alleged permanent partial disability of Plaintiff resulting from the injury by accident. Plaintiff shall bear the costs of such deposition.
 S/ __________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _________________________ DIANNE C. SELLERS COMMISSIONER
S/ _________________________ COY M. VANCE COMMISSIONER